[Civ. No. 42940. Second Dist., Div. One. Jan. 23, 1975.]

CECILE ROSENTHAL et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF LOS ANGELES COUNTY,
Defendants and Respondents;
CENTURY MALIBU, INC., et al., Real Parties in Interest and
Respondents.

## COUNSEL

Carlyle W. Hall, Jr., Mary D. Nichols, John R. Phillips, Brent N. Rushforth, Fredric P. Sutherland and Alvin S. Kaufer for Plaintiffs and Appellants.

John H. Larson, County Counsel, James Dexter Clark and David H. Breier, Deputy County Counsel, for Defendants and Respondents.

Oliver, Stoever & Laskin, Richard Laskin and C. Edward Dilkes for Real Parties in Interest and Respondents.

## OPINION

**WOOD, P. J.**—Petitioners and plaintiffs sought declaratory relief, injunctive relief, and a writ of mandate compelling defendants and respondents (board of supervisors, members of board, planning commission, members of commission) to take certain actions regarding their approval of changes in zoning of five parcels of undeveloped land in the Malibu area. Petitioners claimed that the zoning changes were unlawful under the Open Space Lands Act (Gov. Code, § 65560 et seq.) in that they were inconsistent with an Environmental Development Guide adopted by the Regional Planning Commission, and that they were invalid under the Environmental Quality Act of 1970 (Pub. Resources Code, § 21000 et seq.) because an environmental impact report was not prepared or considered prior to approval of the zoning changes. The superior court concluded that the actions taken by respondents with reference to each zoning change were proper and lawful, and that petitioners were entitled to an injunction prohibiting respondents from issuing any permits or approvals relating to the projects in question until (a) environmental impact reports have been prepared and approved, (b) a copy of each such report is delivered to petitioners, and (c) respondent commission conducts a public hearing with reference to the reports.

Petitioners appeal from the portion of the judgment in favor of respondents.

Appellants contend that each rezoning is inconsistent with the open-space provisions of the Environmental Planning Guide ("guide," hereinafter) and is therefore unlawful under the Open Space Land Act; that each of the rezoning ordinances is invalid under the California Environmental Quality Act (CEQA) because an environmental impact report was not prepared and considered before the ordinance was adopted.

The matter was submitted on the pleadings, exhibits attached thereto (including copy of guide), declarations, and a deposition. It does not appear that there is any controversy as to the facts.

On September 1, 1970, the Regional Planning Commission of the county approved an Environmental Development Guide; and on October 1, 1970, the board of supervisors adopted the guide as a preliminary plan for the county. The guide was the first phase of a three-phase study leading to adoption in the future of a comprehensive

general plan for the county. On the title page of the guide it is stated that the guide is a "Preliminary General Plan for Los Angeles County." The guide provides in part as follows: "Phase One has concentrated on a factual and analytic review of physical, social, and economic conditions in Los Angeles County and how these conditions affect public policy. This report brings these results together. It relates broad social, physical and economic goals for the County and focuses on urgently needed adjustments in physical development policies and programs. During Phase Two, analytical substance and policy review will be broadened and intensified. Special effort will be made to obtain wide-spread discussions and meaningful input by citizen and public officials. Groundwork will be laid in advance for effective implementation of the comprehensive general plan which is scheduled for preparation and adoption in Phase Three."

The guide also refers to proposed courses of action to "Revitalize older portions of existing urban development," to "Maintain and Conserve sound existing development," to "Limit urban expansion to those areas most suitable for new development," and to "Create an open space system for urban and nonurban areas." In addition to references to "open space," there are references in the guide to "open and rural"; "Open, rural and agricultural"; and "recreation and open space."

At the time the board of supervisors adopted the preliminary guide (Oct. 1, 1970), existing legislation did not require that there be consistency between the general plan and zoning ordinances of a local agency. On November 23, 1970 (about three months after the guide was approved by the planning commission, and two months after the board adopted the guide), the Open Space Land Act (Gov. Code, § 65560 et seq.) became effective (Nov. 23, 1970).

On January 11, 1972, the planning commission recommended a change in zoning for a parcel of 163.1 acres north of Pacific Coast Highway and west of Malibu Canyon Road from "light agricultural—1 acre required area" and "Heavy agricultural—5 acres required area" to "Residential Planned Development—1 acre required area—3 units per acre"; and on May 9, 1972, the board adopted the recommended change in zoning.

On February 8, 1972, the planning commission recommended a change in zoning for a 104-acre parcel south of Pacific Coast Highway and west of Malibu Canyon Road from "scientific research and

development" to "Residential Planned Development—1 acre required—22 units per acre"; and, in June 1972, the board adopted the recommended change.

On February 8, 1972, the planning commission recommended a change in zoning for a 100-acre parcel north of the highway and west of Decker Road from light agricultural to residential planned development, 2 units per acre; and on July 13, 1972, the board adopted the recommended change.

On March 28, 1972, the planning commission recommended a change in zoning for a 622-acre parcel between Mulholland Highway and Encinal Canyon Road from "Resort and Recreation" and light agricultural to residential planned development, 1 unit per acre; and on June 29, 1972, the board adopted the recommended change.

On February 8, 1972, the planning commission recommended a zoning change for a 2.8-acre parcel north of Pacific Coast Highway and east of Cavalleri Road from "single family residential—20,000 square feet required area" to "limited Multiple residence—20 units per acre;" and on March 4, 1972, the board adopted the recommended change.

It was alleged that the above-mentioned parcels are in an area referred to in the guide as "open and rural."

From the time the board of supervisors adopted the guide (Oct. 1, 1970) until June 28, 1973, the staff of the planning commission worked on preparation of a general plan and reviewed, modified, and amended provisions of the guide. On June 28, 1973, the board enacted an ordinance (No. 10709) adopting a general plan and zoning ordinance (No. 10710) which was consistent with the general plan.[1]

---

[1]Trial of the action herein was in 1972 and judgment was entered February 1, 1973. The respondents have submitted to this court a certified copy of the resolution made by the board on June 28, 1973, adopting the final general plan (and final environmental impact report); and respondents and real parties in interest request that this court take judicial notice thereof under *Jordan* v. *County of Los Angeles,* 267 Cal.App.2d 794 [73 Cal.Rptr. 516], (see *infra*). Said resolution states in part as follows: "NOW THEREFORE BE IT RESOLVED, that the Board of Supervisors of Los Angeles County does hereby adopt as the General Plan of Los Angeles County (unincorporated territory), the *Environmental Development Guide* of 1970; as amended by the document dated March 21, 1973, entitled *Proposed Amendments to the General Plan of Los Angeles County (Environmental Development Guide);* as modified by Commission actions of April 13 and June 28, 1973; and as further modified by the Board of Supervisors on this date; and accompanying maps; to be known hereafter as the General Plan of Los Angeles County."

Findings of the court were in part as follows: Each of the plaintiffs is a proper party to institute and prosecute all causes of action herein. The Environmental Development Guide approved by the commission on September 1, 1970, and adopted by the board on October 1, 1970, "is on its face only an interim or preliminary plan, being the first phase of a three-phase study leading to the ultimate adoption of a final open space plan and comprehensive general plan at some time in the future." The guide was prepared and adopted prior to the effective date, November 23, 1970, of the Open Space Lands Act. The terms "open space," "open and rural," "recreation and open space," and "open, rural and agricultural," as those terms appear in the guide were not intended to conform to the definition of "open space" as that term is used in said Act. There is no evidence that a copy of the guide or any element thereof was submitted to the Secretary of the Resources Agency as required by section 65563 of the Government Code. The guide does not have an "action program," pursuant to section 65564 of said code, consisting of detailed programs to implement the goals and policies of the guide. Until January 1, 1973, there was no positive legal duty under section 65860 of the Government Code, or under any provision of the State Planning and Zoning Law, that zoning be consistent with the adopted general plan of the county. Each of the zoning changes herein was enacted by ordinances which became effective prior to January 1, 1973, and there was no requirement that they be consistent with the adopted general plan of the county. The enactment of the zoning changes by the board, as well as the recommendations by the commission pertaining thereto, were legislative or quasi-legislative activities; and as such activities, they are governed by the legislative declaration in section 65800 of the Government Code, which provides for only a minimum of limitation on zoning and planning activities and for exercise by counties of the maximum degree of control over local zoning matters. Section 309.1 of the Los Angeles County Zoning Ordinance requires only that the matters contained therein be considered by the commission in making recommendations for zoning changes, and it does not impose a requirement that such matters be incorporated in formal written findings. To the extent, if any, that the findings made by the commission with respect to each of the zoning changes herein contained any omission, there is no evidence that a different result would have been probable had such omission not been made. Accordingly, any such omission would not affect validity of the actions taken by the commission or the board with reference to the zoning cases herein. Subsequent to trial and submission of the matter, the Supreme Court decided *Friends of Mammoth* v. *Board of Supervisors* (8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049]), declaring that the

Environmental Quality Act is applicable to private projects for which a permit or other entitlement is required. As of October 26, 1972 (date when court pronounced judgment), no permit or other entitlement for use had been issued for construction of any specific project to any of the real parties in interest except to Herman Rappaport, who has received an approved conditional use permit and grading permit and has completed grading under the permit. Petitioners, therefore, are not prejudiced by the actions taken with respect to the zoning changes, "provided that bona fide and objective environmental impact reports are prepared and filed in connection with any specific construction project to be undertaken by the real parties in interest as to the subject properties of the zone change cases in question, and Petitioners and the public in general are afforded the opportunity to be heard at a public hearing conducted in accordance with applicable notice provisions." The county does not have a "conservation element" within the meaning of section 21151 of the Public Resources Code. The Rappaport property is not located in the area designated "Open Space" in the guide.[2]

Conclusions of law were in part as follows: The actions taken by defendants (board and commissioners) with respect to each zone change set forth in the petition were proper and lawful. Petitioners are entitled to have respondents enjoined and prohibited from issuing any further permits or approvals relating to the projects in question until and unless (a) objective and bona fide environmental impact reports regarding the projects in question have been prepared and approved by the county; (b) a copy of such report, together with the raw data or environmental impact assessment prepared by any real party in interest and submitted tthe county, is delivered to petitioners; (c) the commission conducts a public hearing with respect to the environmental impact reports and with respect to their further actions regarding the projects in question after reasonable notice of such hearing allowing reasonable opportunity to appear and be heard is given to petitioners, their attorneys, and the public generally.

 As above stated, one of appellants' contentions is that each of the rezoning ordinances is invalid under the California Environmental Quality Act (CEQA) because an environmental impact report was not prepared and considered before the ordinance was adopted.

---

[2]As previously stated, there were findings and evidence relating to zoning changes of *five* parcels, including the Rappaport parcel. Appellants' opening brief commences with the statement that "This action involves a challenge to *four* major zone changes . . . [italics added] in areas depicted in the guide as appropriate 'only for "open and rural" land uses'." It thus appears that plaintiffs-appellants are challenging only the four parcels—not the Rappaport parcel.

Appellants argue to the effect that the trial court erred in ruling that the adoption of each of the four rezoning ordinances was proper and lawful. As above shown, the trial court found that petitioners were not prejudiced by the rezoning, provided that environmental impact reports were prepared and filed in connection with any construction project to be undertaken by the real parties in interest on the properties, and that petitioners and the public are afforded an opportunity to be heard at a public hearing.

It appears that the trial court was of the opinion that it was not necessary to consider whether an environmental impact report was required before the ordinances were adopted, but that such considera- tion would be required before any construction was commenced on the parcels. Appellants assert, in substance, that the trial court narrowly construed the decision in *Friends of Mammoth* v. *Board of Supervisors,* 8 Cal.3d 247 [104 Cal.Rptr. 761, 502 P.2d 1049], and thereby erred in ruling in effect that it was not necessary for the board to consider the requirements of the Environmental Quality Act before adopting the ordinances.

Section 21151 of the Public Resources Code, in effect at the time of adopting the rezoning ordinances herein, provided in part: "The legislative bodies of all cities and counties which have an officially adopted conservation element of a general plan shall make a finding that any project they intend to carry out, which may have a significant effect on the environment, is in accord with the conservation element of the general plan. All other local governmental agencies shall make an environmental impact report on any project they intend to carry out which may have a significant effect on the environment and shall submit it to the appropriate local planning agency as part of the report required by Section 65402 of the Government Code."[3]

After the appeal herein was submitted for decision, the Supreme Court of California rendered its decision in *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68 [118 Cal.Rptr. 34, 529 P.2d 66], which case involved city ordinances permitting the drilling of test oil wells, and ordinances establishing oil-well drilling districts. In that case the

[3]Said section 21151, as amended (effective Dec. 5, 1972), provided: "All local agencies shall prepare . . . and certify the completion of an environmental impact report on any project they intend to carry out or approve which may have a significant effect on the environment. When a report is required by Section 65402 of the Government Code, the environmental impact report may be submitted as a part of that report."

Supreme Court ruled in effect that the city council failed to comply with the requirement of the California Environmental Quality Act "that environmental issues be considered and resolved before a project is approved." It was said further therein that "CEQA requires that an agency determine whether a project may have a significant environmental impact, and thus whether an EIR is required, *before* it approves that project." Also it was said in the *No Oil* case (p. 79, fn. 8): "The statutory definition of an EIR requires that the report be considered before a project is approved (see Pub. Resources Code, § 21061), which necessarily implies that the decision whether or not to prepare a report must precede approval of the project."

In view of the fact that city ordinances were the subject matter in the *No Oil* case, it appears that it was held impliedly therein that adopting an ordinance was a project within the meaning of the Environmental Quality Act.

In the recent case of *Bozung* v. *Local Agency Formation, Commission* (1975) 13 Cal.3d 263 [118 Cal.Rptr. 249, 529 P.2d 1017], which involved a resolution for the annexation of ranch land to the City of Camarillo, it was held that the approval of city annexation was a project within the meaning of the Environmental Quality Act. It was said therein (p. 285) that: "We have however shown that the LAFCO [Local Agency Formation Commission] consideration of the proposed annexation is a project all by itself." It was stated further in the *Bozung* case (p. 277, fn. 16): "Then CEQA declares to what projects the act applies, including in the open-ended definition of discretionary projects 'the enactment and amendment of zoning ordinances.' (§ 21080.)"

In the *No Oil* case it was said (p. 80): "[A] determination that a project does not require an EIR, when that project is not exempt from environmental study under the act or guidelines, [fn. omitted] must take the form of a written Negative Declaration."

It was said in the *Friends of Mammoth* case, *supra* (8 Cal.3d 247, p. 272), that some of the parties therein had asserted that in the period between November 23, 1970, when the Environmental Quality Act became effective, and September 12, 1972, the date of the Supreme Court decision in *Mammoth*, governmental agencies had approved private projects without requiring environmental impact reports in the erroneous belief but in good faith that the projects were exempt from the act; and some of the parties had asked the court to make its decision

prospective only. The Supreme Court said (p. 272): "We see no need for such a drastic step." It thus appears that the decision therein is to have retroactive application.

▮ In summary, in view of the Supreme Court decisions in *Friends of Mammoth*, *No Oil*, and *Bozung*, it is to be concluded: (1) that the adoption of each rezoning ordinance in the present case was a project within the meaning of the Environmental Quality Act; (2) that the environmental issue, as to whether each project (adoption of each ordinance) might have a significant effect on the environment, should have been considered and resolved before the ordinance was adopted; (3) that the ruling in *Friends of Mammoth* is to have retroactive application; and (4) that the trial court herein erred in ruling to the effect that the adoption of each rezoning ordinance was proper and lawful, without prior consideration and resolution of the environmental issue.

By reason of the above conclusions, it is not necessary to discuss other contentions of appellants.

The judgment of the superior court should be reversed. The superior court shall set aside the ordinance rezoning the four parcels of land (but not including the Rappaport parcel, 2.8 acres, not an issue on appeal) on the ground that the board, in enacting the ordinances, failed to comply with provisions of the California Environmental Quality Act in that the environmental issue was not considered and resolved before the ordinances were adopted. The county, of course, may choose to reenact these ordinances after complying with the requirements of the act.

The judgment is reversed, and the cause is remanded to the superior court to proceed in accordance with the views herein expressed.

Lillie, J., and Hanson, J., concurred.

A petition for a rehearing was denied February 20, 1975.